**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Honorable Marcia S. Krieger**

Civil Action No. 12-cv-00593-MSK

**THERESA R. LONGMORE,**

    Plaintiff,

v.

**CAROLYN W. COLVIN, Acting Commissioner of Social Security,**

    Defendant.[1]

## OPINION and ORDER

**THIS MATTER** comes before the Court on Plaintiff Theresa R. Longmore's appeal of the Commissioner of Social Security's final decision denying her application for Disability Insurance Benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-33. Having considered the pleadings and the record, the Court

**FINDS** and **CONCLUDES** that:

**I.**     **Jurisdiction**

Ms. Longmore filed a claim for disability insurance benefits pursuant to Title II. She asserted that her disability began on October 3, 2008. After her claims were initially denied, Ms. Longmore filed a written request for a hearing before an Administrative Law Judge ("ALJ"). This request was granted and a hearing was held on May 19, 2011.

After the hearing, the ALJ issued a decision with the following findings: (1) Ms. Longmore met the insured status requirements of the Social Security Act through June 30, 2013;

---

[1] At the time Ms. Longmore filed her appeal, Michael J. Astrue was the Commissioner of Social Security. Carolyn W. Colvin is substituted as the Defendant in this action to reflect her designation as Acting Commissioner of Social Security, effective February 14, 2013.

(2) she had not engaged in substantial gainful activity since October 3, 2008; (3) she had the following severe impairments: fibromyalgia, insomnia, scoliosis and degenerative changes of the spine, chronic sinusitis, and a history of deep vein thrombosis requiring indefinite Coumadin treatment; (4) none of these impairments, considered individually or together, met or were equivalent to one of the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1 ("the Listings"); (5) Ms. Longmore had the Residual Functional Capacity ("RFC") to perform sedentary work with the following limitations: lifting and carrying ten pounds both frequently and occasionally; standing and/or walking, with normal breaks, for a total of six hours in and eight hour workday; performing pushing and pulling motions with the upper and lower extremities within the aforementioned weight restrictions; avoiding unprotected heights and moving machinery; restriction to a "relatively clean" work environment, meaning a low level of pollutants; occasional climbing, stooping, crouching and kneeling; no climbing ladders, ropes, or scaffolds; no crawling; occasionally performing bilateral overhead reaching and, due to use of blood thinners, avoidance of sharp objects such as kitchen knives; and (7) she was not disabled because she was able to perform her past relevant work as a telephone solicitor as well as other jobs in the national economy, including order clerk, receptionist, and information clerk.

The Appeals Council denied Ms. Longmore's request for review of the ALJ's decision. Consequently, the ALJ's decision is the Commissioner's final decision for purposes of judicial review. *Krauser v. Astrue*, 638 F.3d 1324, 1327 (10th Cir. 2011). Ms. Longmore's appeal was timely brought, and this Court exercises jurisdiction to review the Commissioner of Social Security's final decision pursuant to 42 U.S.C. § 405(g).

**II.     Material Facts**

Having reviewed the record in light of the issues raised, the material facts are as follows. According to the medical record, Ms. Longmore periodically complained of hoarseness and a sore throat to her primary physician, Dr. Vecchiarelli.  His treatment records indicate that she complained of these symptoms several times in 2006 and 2007.  In February and March 2008, Dr. Vecchiarelli noted that Ms. Longmore had a sore throat, cough, and laryngitis.  Beginning in early October 2008, Ms. Longmore's symptoms became worse, and she had a very hoarse voice. Dr. Vecchiarelli's assessment at that time was persistent hoarseness and cough, and his notes periodically affirmed this assessment, with notes from December 2008, February 2009, March 2009, and September 2010 indicating laryngitis or hoarseness.

Beginning in October 2008, Ms. Longmore saw Dr. Cichon, an otolaryngologist, for evaluation of her hoarseness.  After performing a number of tests and concluding that surgery was unnecessary, Dr. Cichon's assessment was hoarseness with vocal cord swelling.  Visits in late October and November indicated no improvement in Ms. Longmore's symptoms.  In December 2008, Dr. Cichon noted that Ms. Longmore's situation was difficult and hypothesized that she had a psychogenic dysphonia causing her hoarseness.  He remarked that Ms. Longmore "returns for follow-up of her persistent hoarseness.  So far nothing has improved and nothing has helped," and recommended further testing with Dr. Ernster, another otolaryngologist.  After performing a partial stroboscopic exam in December 2008, Dr. Ernster concluded that an "incomplete glottis closure occurs suggesting a form of muscle tension dysphonia."  He recommended speech therapy.

Beginning in late December 2008 and continuing through March 2009, Ms. Longmore attended speech therapy several times per week with Ms. Doumas.  Based on an initial

assessment that diagnosed hoarseness caused by a voice disorder, Ms. Doumas' treatment focused on vocal hygiene, vocal exercises, and reduced use of her voice. Although Ms. Longmore consistently attended her treatment sessions, the medical records from these sessions indicate that Ms. Longmore continued to suffer from hoarseness, voice weakness, breathiness, and decreased adduction. Ms. Doumas noted on February 3, 2009, that Ms. Longmore's voice was breathy to almost aphonic and was getting worse despite frontal resonance and relaxation exercises. On February 8 and 19, Ms. Doumas noted improved but inconsistent volume with moderate harshness. However, Ms. Doumas indicated on February 23 that Ms. Longmore's voice harshness persisted and became worse when she spoke over one hour or had sinusitis. Two days later, Ms. Doumas recommended reduced voice use but noted that Ms. Longmore's voice was improved for the one hour session. The results of a lung capacity test performed on March 3 were within normal limits, but indicated that Ms. Longmore had vocal cord adduction difficulty. Based on the numerous therapy sessions, Ms. Doumas' final assessment on March 11 was that Ms. Longmore continued to have inconsistent endurance for her voice quality.

At Step 2, the ALJ did not find that Ms. Longmore's vocal cord dysfunction was a severe impairment. Additionally, there was no further reference to Ms. Longmore's vocal cord dysfuction in the remainder of the decision. The RFC finding did not reflect speaking limits and the hypothetical questions posed to the vocational expert did not reflect functional limits associated with a vocal cord impairment.

### III.      Issues Presented

Ms. Longmore raises six challenges to the Commissioner's decision: (1) the ALJ should have considered Ms. Longmore's vocal cord dysfunction to be a severe impairment at Step 2; (2) the ALJ failed to properly evaluate Ms. Longmore's cervical spine impairments and vocal cord

dysfunction at Step 3; (3) the ALJ failed to properly evaluate the treating source opinions of Dr. Vecchiarelli; (4) the ALJ did not properly assess Ms. Longmore's credibility; (5) the ALJ's finding at Step 4 that Ms. Longmoe could perform her past relevant work as a telephone solicitor is not supported by substantial evidence; and (6) the ALJ's conclusion at Step 5 that Ms. Longmore could perform other work identified by the vocational expert is not supported by substantial evidence.  As the Court concludes that Ms. Longmore's first challenge warrants reversal and remand for further proceedings at Step 2, and if necessary, Steps 3 through 5, it is not necessary to to address her remaining challenges.

### IV.     Standard of Review

Judicial review of the Commissioner of Social Security's determination that a claimant is not disabled within the meaning of the Social Security Act is limited to determining whether the Commissioner applied the correct legal standard and whether the decision is supported by substantial evidence.  *Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003).  "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  It requires more than a scintilla, but less than a preponderance.  *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007).  On appeal, a reviewing court's job is neither to "reweigh the evidence nor substitute our judgment for that of the agency."  *Branum v. Barnhart*, 385 f.3d 1268, 1270, 105 Fed. Appx. 990 (10th Cir 2004) (*quoting Casias v. Sec'y of Health & Human Servs.*, 933 F.2d 799, 800 (10th Cir. 1991)).

Step 2 of the sequential disability evaluation analysis requires the ALJ to consider the medical severity of the claimant's impairments.  20 C.F.R. § 404.1520(a)(4)(ii).  An impairment or combination of impairments is severe if it significantly limits a claimant's physical or mental ability to do basic work activities.  20 C.F.R. § 404.1521(a).  Although the existence of a

condition or ailment alone is not enough, a claimant need only make a *de minimis* showing of impairment to satisfy the requirements of Step 2. *Langley v. Barnhart*, 373 F.3d 1116, 1123 (10th Cir. 2004) (*citing Bowen v. Yuckert*, 482 U.S. 137, 158, 107 S.Ct. 2287 (1987)).

A Step 2 finding is based on medical evidence alone, and does not include consideration of evidence relating to age, education, and work experience. SSR 85-28; *Williams v. Bowen*, 844 F.2d 748 (10th Cir. 1988); 20 C.F.R. § 404.1508 (physical or mental impairments must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by a claimant's statement of symptoms). An error at Step 2 may be harmless if the ALJ finds that some other impairment is severe and continues to the remaining steps in the sequential disability evaluation, taking all impairments into account in determining the Claimaint's Residual Functional Capacity. *Grotendorst v. Astrue*, 370 Fed.Appx. 879, 883 (10th Cir. 2010); *see also Carpenter v. Astrue*, 537 F.3d 1264, 1266 (10th Cir. 2008); 20 C.F.R. §§ 404.1523 and 1545.

**V.     Discussion**

At Step 2, the ALJ found that Ms. Longmore had several severe impairments. However, the ALJ also found that Ms. Longmore's vocal cord dysfunction was not a severe impairment. The ALJ found that Ms. Longmore's vocal cord dysfunction resulted in some hoarseness, but that it was not severe because surgery was not required, Ms.Longmore underwent therapy in 2008 to improve vocal hygiene and relaxation, and recent records did not document this impairment. Ms. Longmore contests the ALJ's finding and argues that her vocal cord dysfunction significantly limited her ability to perform basic work activities, in particular speaking clearly. The Commissioner argues that the medical record does not support functional limitations stemming from Ms. Longmore's vocal cord dysfunction. The Commissioner also

argues that this impairment lasted only ten months and thus did not meet the durational requirement of a disability.  Finally, the Commissioner argues that any error at Step 2 was harmless.

The Court begins with the question of whether the ALJ failed to consider objective evidence in the record that indicated that Ms. Longmore's vocal cord dysfunction caused more than minimal functional limitations and, if so, whether this error was harmless.

The decision reflects some consideration of the medical records which address Ms. Longmore's vocal cord dysfunction.  However, a substantial amount of relevant evidence was not addressed.  Although Dr. Cichon did not recommend surgery for Ms. Longmore's vocal cord dysfunction, he noted swelling in Ms. Longmore's vocal cords in October 2008.  In December 2009, he indicated that Ms. Longmore "returns for follow-up of her persistent hoarseness.  So far nothing has improved and nothing has helped."  He observed that Ms. Longmore exhibited strained vocal quality and hoarseness, might have had a psychogenic dysphonia, and referred her to Dr. Ernster.  After performing a partial stroboscopic exam, Dr. Ernster concluded that Ms. Longmore had a form of muscle tension dysphonia and recommended speech therapy.

Ms. Longmore attended speech therapy from December 2008 to March 2009.  An initial evaluation diagnosed hoarseness caused by a voice disorder.  The speech therapist, Ms. Doumas, focused on vocal hygiene, vocal exercises, and reduced use of her voice.  Despite this therapy, Ms. Longmore did not make a great deal of progress and the treatment notes consistently indicate that she suffered from hoarseness, voice weakness, breathiness, and decreased adduction. During the month of February, Ms. Doumas noted both improvement and regression in Ms. Longmore's voice quality.  At some points, Ms. Longmore was almost aphonic and had very limited voice endurance despite her exercises.  At other times she had improved, but inconsistent

volume. Overall, she continued to have moderate harshness, prompting Ms. Doumas to iterate her recommendation that she reduce her voice usage. Although the results of a lung capacity test performed in March were normal, they also indicated that Ms. Longmore had vocal cord adduction difficulty. Ultimately, Ms. Doumas' final assessment was that Ms. Longmore continued to have inconsistent endurance for her voice quality.

The speech therapist's notes were supplemented by doctor's notes that consistently indicate hoarseness and vocal cord dysfunction. In addition to Dr. Cichon and Dr. Ernster's observations, Dr. Vecchiarelli, her treating physician, observed in October 2008 that Ms. Longmore had a cough, hoarseness, sore throat and congestion. Dr. Vecchiarelli repeated these observations in notes from November and December 2008, February 2009, and September 2010.[2] Considering the *de minimis* standard for establishing a severe impairment, these records indicate at least minimal impairment from vocal cord dysfunction. As such, they should have been considered at Step 2.

Given the failure to consider all the medical evidence related to the functional limitations caused by Ms. Longmore's vocal cord dysfunction, the Court next determines whether this error was harmless. As noted, an error at Step 2 may be harmless if the impairment at issue was considered in subsequent analysis. *Grotendorst*, 370 Fed.Appx. at 883; 20 C.F.R. §404.1545(e). In this case, there is no indication that the ALJ considered Ms. Longmore's vocal cord dysfunction after Step 2.

---

[2] The Commissioner notes that Ms. Longmore's medical records only mention voice hoarseness from March 2007 to August 2009. According to the Commissioner, Ms. Longmore did not meet the minimum time period for an impairment to qualify as a disability, twelve months, because she claims her disability began in October 2008, only ten months prior to August 2009. However, Dr. Vecchiarelli noted that Ms. Longmore had a cough and hoarseness in his treatment record from September 2010. Additionally, the ALJ's Step 2 finding was not based on this reasoning, making this a *post hoc* argument inappropriate for judicial review. *See Robinson v. Barnhart*, 366 F.3d 1078, 1084 (10th Cir. 2004) (ALJ's decision should be evaluated solely on the reasons stated in the decision).

Although the decision includes the statement that the ALJ "[carefully] considered the entire record," this assertion is not supported in the decision. Taking the statement that the entire record was considered at face value, one would expect further discussion of Ms. Longmore's vocal cord dysfunction, the medical evidence related to her vocal cord dysfunction, as well as Ms. Longmore's statements regarding her subjective symptoms. However, the analysis at Steps 3, 4, and 5 does not mention Ms. Longmore's vocal cord dysfunction or any related medical evidence or symptoms. No limitations stemming from Ms. Longmore's vocal cord dysfunction were included in the Step 4 RFC finding or in the questions posed to the vocational expert. Most significant, is that the ALJ concluded that Ms. Longmore was able to perform her past relevant work as a telephone solicitor, a job that is dependent upon her voice. It appears that Ms. Longmore's vocal cord dysfunction was not given further consideration after Step 2. As such, the error at Step 2 was not harmless.

For the forgoing reasons, the Commissioner of Social Security's decision is **REVERSED**, and the case is **REMANDED** for further proceedings at Step 2, and if appropriate, Steps 3, 4, and 5. The Clerk shall enter a Judgment in accordance herewith.

DATED this 13th day of May, 2013

                                        **BY THE COURT:**

                                        Marcia S. Krieger
                                        United States District Judge